USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/1/11

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------- X

DAVID C. SOWARD,

          **Plaintiff,**

    - against -

DEUTSCHE BANK AG and DEUTSCHE
BANK SECURITIES, INC.,

        **Defendants.**

———————————————————

THOMAS R. BECNEL and JARDINE
VENTURES, LLC,

         **Plaintiffs,**

    -against-

DEUTSCHE BANK AG and DEUTSCHE
BANK SECURITIES, INC.,

        **Defendants.**

-------------------------------------------------- X

                            **OPINION AND ORDER**

                            **10 Civ. 9248 (SAS)**

                            **11 Civ. 01615 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

       Plaintiffs, Thomas R. Becnel and Jardine Ventures, LLC (collectively

"Becnel") and David Soward, bring these diversity actions against Deutsche Bank

AG and Deutsche Bank Securities, Inc. (collectively "Deutsche Bank") alleging

state-law claims of fraud, conspiracy to commit fraud, fraudulent concealment, aiding and abetting fraud, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of contract and breach of implied duty of good faith and fair dealing.  Soward filed his Complaint on December 10, 2010 and Becnel filed his Complaint on March 9, 2011.  These cases arise out of a tax shelter scheme known as the Bond Linked Issue Premium Structure Strategy ("BLIPS Strategy"), which the parties carried out between September 1999 and May 2000.  Deutsche Bank argues that each of Soward's and Becnel's claims is time-barred as well as insufficient as a matter law.  Deutsche Bank now moves to dismiss Soward's Amended Complaint and Becnel's Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons given below, these two cases are dismissed in their entirety.

## II.    BACKGROUND[1]

### A.    The BLIPS Strategy

Soward and Becnel claim that Deutsche Bank conspired with Presidio Growth LLC and Presidio Advisory Services, LLC (collectively "Presidio") to defraud them by inducing them to invest in "investment program[s]" called

---

[1]    On a motion to dismiss, a plaintiff's factual allegations are accepted as true.  *See, e.g.*, *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC*, 568 F.3d 374, 376 (2d Cir. 2009).

"Alverstone Strategic Investment Fund" ("Alverstone") and "Hubbard Strategic Investment Fund" ("Hubbard"), respectively, and to charge them fees for loans, to be supplied by Deutsche Bank, that never existed.[2]  What Soward and Becnel refer to as an "investment program" is actually an illegal tax shelter known as the BLIPS Strategy.[3]  On December 21, 2010, Deutsche Bank entered into a non-prosecution agreement admitting wrongdoing in connection with the BLIPS strategy.[4]  In the NPA, Deutsche Bank admitted that "the BLIPS transactions were designed to enable BLIPS investors to claim a purported tax benefit . . . .  The BLIPS transactions were designed by KPMG and Presidio to create the impression that the loans [supplied by Deutsche Bank] had an unusual premium structure at an interest rate well above prevailing market rates."[5]  As part of the tax shelter strategy, the BLIPS customer and Deutsche Bank would enter into a series of interest rate swaps, which had the net effect of  "'convert[ing] the loans to variable-rate loans,

---

[2]     *See* David C. Soward's Memorandum of Law in Opposition to Deutsche Bank's Motion to Dismiss ("Soward Mem.") at 6.  *See also* Becnel Complaint ("Becnel Compl.") ¶ 1.

[3]     *See* 12/21/10 Deutsche Bank AG - Non-Prosecution Agreement ("NPA"), Ex. 4 to Declaration of Keith Blackman, Attorney for Deutsche Bank, in Support of Motion to Dismiss Plaintiff's Amended Complaint ("Blackman Decl.").

[4]     *See* Soward Mem. at 7; *see also* Soward Amended Complaint ("Soward Am. Compl.") ¶ 28.

[5]     NPA ¶¶ 6, 10.

at market rates, with no premium.'"[6]  During these transactions, Deutsche Bank

"'took steps to have the BLIPS series of transactions approved with [Deutsche

Bank].'"[7]  "'[Deutsche Bank's] credit reports, for example, falsely identified the

primary purpose of BLIPS as providing the investor with an opportunity to make

profits based on the potential depreciation of emerging market currencies.'"[8]

### 1.    Soward and the BLIPS Strategy

As part of the BLIPS Strategy,[9] Soward entered into a credit

agreement ("Soward Credit Agreement") with Deutsche Bank for loans totaling

$10.4 million on or about September 3, 1999.[10]  Deutsche Bank then opened an

account for Voltaire, LLC ("Voltaire"), a limited liability company solely owned

by Soward, which Presidio Growth LLC and Presidio Advisory Services, LLC

---

[6]      Soward Mem. at 13 (quoting NPA ¶ 10).

[7]      *Id.* (quoting NPA ¶ 10).

[8]      *Id.* (quoting NPA ¶ 10).

[9]      Soward does not call the scheme "BLIPS" in his Amended Complaint but uses the name "Alverstone Strategic Investment Fund ("Alverstone")".  *See* Soward Am. Compl. ¶ 1.  However, in Soward's brief, he refers to the transactions as BLIPS transactions.  *See* Soward Mem. at 6.  Soward requests leave to further amend his complaint to incorporate the contents of the original complaint, including references to the BLIPS transaction.  *See id.* at 9.

[10]      *See* Soward Am. Compl. ¶ 16.  The loan detailed in the Soward Credit Agreement consisted of a principal amount of $ 6.5 million and a premium amount of $ 3.9 million with a maturity date of seven years from the date of funding.

(collectively "Presidio") formed for Soward.[11]  Soward deposited $224,250.00 into the Voltaire account to serve as collateral for the loans Deutsche Bank was supposed to supply.[12]  Approximately three weeks after Soward entered into the Soward Credit Agreement, Soward entered into an assignment and assumption agreement ("Soward Assignment Agreement") and assigned Voltaire's rights in the Soward Credit Agreement to the Alverstone Strategic Investment Fund.[13]  Soward claims that the Fund was purportedly managed by Presidio but was actually under the control of Deutsche Bank.[14]  The Voltaire and Alverstone accounts were closed by Deutsche Bank on May 15, 2000.[15]  Soward alleges that the loan between Deutsche Bank and Voltaire was a sham and that Deutsche Bank and Presidio "defrauded Soward by charging him fees and interest upon the fraudulent representation that there was a bona fide loan in place."[16]

### 2.    Becnel and the BLIPS Strategy

Becnel's participation in the BLIPS strategy is nearly identical to

---

[11]    *See id.* ¶¶ 1-2.

[12]    *See id.* ¶ 2.

[13]    *See id.* ¶ 21.

[14]    *See id.*

[15]    *See id.* ¶ 14.

[16]    *See id.* ¶ 33.

Soward's.  On or about September 12, 1999, Becnel entered into a credit

agreement ("Becnel Credit Agreement") with Deutsche Bank for a loan totaling

eighty million dollars.[17]  Becnel then opened an account at Deutsche Bank for

Jardine Ventures, LLC ("Jardine"), a limited liability company created by Presidio

and solely owned by Becnel, and deposited $2.1 million into the account as

collateral for the eighty million dollar loan.[18]  Approximately three weeks after

Becnel executed the credit agreement, Becnel executed an assignment and

assumption agreement ("Becnel Assignment and Assumption Agreement"),

assigning Jardine's rights to the Becnel Credit Agreement to Hubbard Strategic

Investment Fund.[19]  The Jardine and Hubbard accounts were closed by Deutsche

Bank on or about May 15, 2000.[20]  As with Soward, Becnel claims that the loan

from Deutsche Bank was a sham.[21]  Becnel, like Soward, alleges that because

"[c]ontrol of the funds never passed from Deutsche Bank to [Becnel] . . . there was

---

[17]     *See* Becnel Compl. ¶¶ 19, 21.  The loan included a stated principal
amount of fifty million dollars and a premium amount of thirty million dollars with
a maturity date of seven years from the date of funding.

[18]     *See id.*

[19]     *See id.* ¶ 22.

[20]     *See* "Plaintiffs' Memorandum of Law in Opposition to Deutsche
Bank's Motion to Dismiss ("Becnel Mem.") at 17.

[21]     *See* Becnel Compl. ¶ 18.

no legitimate basis for the fees charged by Deutsche Bank and Presidio."[22]

### B.    The Class Actions

On January 28, 2005, Becnel filed claims "as lead plaintiff on behalf of others similary situated against Deutsche Bank, Presidio, KPMG, Sidley Austin and others in a class action law suit."[23]  *Becnel v. KPMG, LLP, et al.* was filed in the Circuit Court of Clark County, Arkansas and later removed to the United States District Court for the Western District of Arkansas.[24]  Class certification was denied on August 9, 2005; the case was dismissed without prejudice on September 12, 2005.[25]  On September 2, 2005, *Kottler v. Deutsche Bank AG, et al.* was filed in the United States District Court for the Southern District of New York involving the same investment program.[26]  Becnel became a member of the *Kottler* class action.[27]  Class certification was denied on March 29, 2010.[28]

---

[22]    *Id.* ¶ 30.  Specifically, Becnel claims that Deutsche Bank and Presidio returned only $273,000 of the $2.1 million, resulting in an economic loss of $1.827 million.  *See id.* ¶ 25.

[23]    *Id.* ¶ 63.

[24]    *See id.*; *see also Becnel v. KMPG*, 229 F.R.D. 592 (W.D. Ark. 2005).

[25]    *See id.*

[26]    *See id.* ¶ 64.

[27]    *See* Becnel Mem. at 19.

[28]    *See* No. 05 Civ. 7773, 2010 WL 1221809 (S.D.N.Y. Mar. 29, 2010).

## III.   APPLICABLE LAW

### A.   Statute of Limitations and New York's Borrowing Statute

"When diversity of citizenship is the basis of jurisdiction, a federal court must look to the statute of limitations of the state in which it sits."[29]  "New York courts generally apply New York's statute of limitations even when the injury giving rise to the action occurred outside New York.  This general rule, however, is subject to a traditional statutory exception, New York's 'borrowing' statute."[30]

Under New York's borrowing statute,[31] "when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period, including all relevant tolling provisions, of either: (1) New York; or (2) the state where the cause of action accrued."[32]

---

[29]     *Cuccolo v. Lipsky, Goodkin & Co.*, 826 F. Supp. 763, 766 (S.D.N.Y. 1993) (citing *Popkin v. National Benefit Life Ins. Co.*, 711 F. Supp. 1194, 1197 n. 1 (S.D.N.Y. 1989)).

[30]     *Stuart v. American Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998) (citations omitted).

[31]     *See* N.Y. C.P.L.R. § 202 ("An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.").

[32]     *Stuart*, 158 F.3d at 627 (citing  N.Y. C.P.L.R. § 202).

"For the purposes of the borrowing statute, a cause of action accrues where the injury is sustained rather than where the defendant committed the wrongful acts."[33]  "Hence, an action by a nonresident on a foreign cause of action is untimely if it is barred under the law of either New York or the state where the injury occurred."[34]  "In cases involving economic harm, [the place where the injury occurred] is normally the state of plaintiff's residence."[35]

> The burden of proving that a particular statute of limitation has expired falls on the defendant.  However, the plaintiff bears the burden of proving that a particular statute of limitation has been tolled.  Finally, when another state's statute of limitations is considered pursuant to N.Y. C.P.L.R. 202, the party seeking to benefit therefrom bears the burden of proof.[36]

## B.   *American Pipe* Tolling and Cross-Jurisdictional Tolling

In *American Pipe and Construction Co. v. Utah*, the Supreme Court held, in the context of exclusively federal claims, that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to

---

[33]     *Gordon & Co. v. Ross*, 63 F. Supp. 2d 405, 408 (S.D.N.Y. 1999) (citations omitted).

[34]     *Stuart*, 158 F.3d at 627.

[35]     *Gorlin v. Bond Richman & Co.*, 706 F. Supp. 236, 240 (S.D.N.Y. 1989) (citations omitted).

[36]     *Cuccolo,* 826 F. Supp. at 776 n. 2 (citations omitted).

continue as a class action."[37]   "Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied."[38]   The Second Circuit has held that state law applies to tolling issues.[39] However,

> [s]ome states that have adopted *American Pipe* tolling have refused to expand the doctrine to include 'cross-jurisdictional class action tolling,' thereby declining to apply the tolling doctrine in situations where they otherwise would have if the original class action had been filed in its own jurisdiction . . . . Only a small fraction of states have addressed the cross-jurisdictional issue, though, and there is no clear consensus among them . . . .  As a result, federal diversity courts are often left to predict how a state's highest court would rule.[40]

The Second Circuit very recently instructed that "a federal court evaluating the timeliness of state law claims must look to the law of the relevant state to determine whether, and to what extent, the statute of limitations should be tolled by

---

[37]     414 U.S. 538, 554 (1974).

[38]     *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 354 (1983).

[39]     *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 213 (2d Cir. 1987) (citations omitted). *Accord Williams v. Dow Chem. Co.*, No. 01 Civ. 4307, 2004 WL 1348932, at *11 (S.D.N.Y. June 16, 2004) ("[T]he Second Circuit has held that state, not federal law, applies to the tolling issues even where the tolling was sought on the basis of a federal lawsuit filed in federal court . . . .  Thus, in this case, I will look to state law to determine if tolling applies.") (citing *In re Agent Orange*, 818 F.2d at 213).

[40]     *In re Fosamax Prods. Liab. Litig.*, 694 F. Supp. 2d 253, 257-58 (S.D.N.Y. 2010) (citations omitted).

the filing of a putative class action in another jurisdiction."[41]  When "a question of state law has not been conclusively resolved by those courts, [the] general practice is to look next to the law of the circuit in which the state is based."[42]

## IV.    DISCUSSION

Because of New York's borrowing statute,[43] the threshold issue is where the causes of action accrued.  Soward resided in California at all relevant times[44] and therefore his claims accrued in California.  Soward's claims will be time-barred under New York's borrowing statute if they are untimely under either New York or California law after accounting for each state's tolling provisions.[45]  Becnel is a Florida resident and his claims accrued in Florida.[46]  Becnel's claims will be time-barred if they are untimely under either New York or Florida's statute

---

[41]    *Casey ex rel. Estate of Casey v. Merck & Co., Inc.*, __ F.3d __, Nos. 10-1137-cv, 10-1196-cv, 10-1150-cv, 10-1149-cv, 2011 WL 3375104, at *5 (2d Cir. Aug. 5, 2011) ("We find . . . that tolling here is properly understood to be a question of state law.") (citations omitted).

[42]    *Id.*

[43]    *See* N.Y. C.P.L.R. § 202.

[44]    *See* Soward Am. Compl. ¶ 10.

[45]    *See* N.Y. C.P.L.R. § 202.

[46]    *See* Becnel Compl. ¶ 11.

11

of limitations.[47]

**A.   Soward's Fraud-Based and Fiduciary Duty-Based Claims**

Under New York law, the statute of limitations for fraud is the greater of six years from the time of accrual or two years from the time the plaintiff discovered the fraud or could with reasonable diligence have discovered it.[48]  This statute of limitations applies to Soward's allegations of fraud, aiding and abetting fraud and fraudulent concealment.[49]  Soward's fiduciary duty-based claims, which include his claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty, have the same statute of limitations.[50]

Soward argues that his claims are timely under the accrual prong of section 213 because, due to the doctrine of continuous representation, the statute of limitations did not begin to run until May 15, 2000 when Deutsche Bank closed the Voltaire and Alverstone accounts.[51]  Furthermore, Soward argues that the claims were tolled from January 28, 2005 to March 29, 2010 during the pendency of the

---

[47]      *See* N.Y. C.P.L.R. § 202.

[48]      *See id.* § 213(8).

[49]      *See Malone v. Bayerische Hypo-Und Vereins Bank*, Nos. 08 Civ. 7277, 09 Civ. 3676, 2010 WL 3918216, at *4 (S.D.N.Y. Feb. 4, 2010).

[50]      *See* N.Y. C.P.L.R. § 213(2).

[51]      *See* Soward Mem. at 20.

*Becnel* and *Kottler* class actions.[52]  Alternatively, Soward contends that his claims are timely under the second prong of section 213 – the discovery prong – because his claims did not accrue until November 18, 2003, when the Senate issued its report, and were tolled during the pendency of *Becnel* and *Kottler*.[53]

### 1.    Accrual Prong

Even accepting Soward's argument that the statute did not begin to run until the closing of the accounts, Soward filed this action on December 20, 2010 well after the six-year statute of limitations expired.  In order for Soward's claims to be timely under this prong, the six-year statute of limitations must have been tolled by the continuous representation doctrine and cross-jurisdictional tolling.  If either of these theories fail, Soward's claims will be untimely.

Whether or not *Becnel* and *Kottler* toll the statute of limitation in New York is a question of cross-jurisdictional tolling.[54]  Few states have addressed cross-jurisdictional tolling,[55] and New York is not one of them.  Deutsche Bank

---

[52]    *See id.* at 23.

[53]    *See id.* at 27.

[54]    Even though *Kottler* was filed in this district, it still implicates cross-jurisdictional tolling because it was filed in federal court based on diversity of citizenship.

[55]    *See In re Fosamax*, 694 F. Supp. 2d at 257 ("Only a small fraction of states have addressed the cross-jurisdictional tolling, though, and there is not clear

argues that New York does not allow cross-jurisdictional tolling and points to two unpublished, and ultimately unhelpful, New York Supreme Court cases.[56]  Soward relies on *Primavera Familienstifung v. Askin*, where a court in this district, applying New York's borrowing statute, examined Connecticut's statute of limitations and tolling provisions.[57]  Despite no Connecticut authority on point, the *Primavera* court held that Connecticut would recognize cross-jurisdictional tolling because (1) there were no issues of forum shopping and (2) "federal interests

---

consensus among them.").

[56]      *See* Deutsche Bank AG and Deutsche Bank Securities, Inc's Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's Amended Complaint at 14 ("Notably, neither New York nor California courts toll a statute of limitations on the basis of a prior class action arising in a different jurisdiction.").

          The two New York Supreme court cases relied on by Deutsche Bank do not, as Deutsche Bank suggests, hold that New York will not recognize cross jurisdictional tolling.  In *Ansley v. Wyeth*, cross-jurisdictional tolling played only a minor rule in the court's refusal to toll the statute of limitations under *American Pipe*.  The court's reasoning included the fact that "the wisdom of adopting the *American Pipe* rule in mass tort cases is, to say the least, highly debatable."  No. 109479/2005 (Sup. Ct. N.Y. Co. Nov. 30, 2009) (citing *In re Rezulin Prods. Liab. Litig.*, 2005 WL 26867, at *3), Ex. 6 to Blackman Decl.  The next case cited by Deutsche Bank, *Feltch v. Warner Lambert*, does not support its argument.  The *Feltch* court's decision to reject tolling based on the filing of a federal class action turned on the fact that "the claim in the class action that plaintiff . . . invokes were for medical monitoring or consumer fraud, while the claims here are for personal injury and possible wrongful death.").  *See* No. 125170/2002 (Sup. Ct. N.Y. Co. Mar. 22, 2000), Ex. 7 to Blackman Decl.

[57]      *See* 130 F. Supp. 2d 450 (S.D.N.Y. 2001).

should be considered where all of the litigation involved is occurring in the federal forum."[58]  The *Primavera* court rejected defendant's contention that "cross-jurisdictional tolling may only apply where the state supplying the statute of limitations would recognize such tolling."[59]  Soward claims that the federal interest in *Becnel* lies in the fact that the *Becnel* court found federal subject matter jurisdiction because there was a substantial, federal question to be decided.[60]  Soward did not suggest any "federal interests" that would apply to the *Kottler* class action.

Soward's reliance on *Primavera* proves unavailing.  The Second

---

[58]     *Id.* at 516.  The court did not elaborate on what "federal interests" it took into consideration.

[59]     *Id.* at 515 ("[The] *Erie* doctrine analysis is not so simple as [defendant] would have it. . . .  These are difficult, barely-charted waters.  However, in the absence of any interest on the part of Connecticut in having tolling barred in the circumstances present here, and the interest of both Connecticut and the federal forum in judicial economy, [plaintiff] may take advantage of the tolling period engendered by the filing of the *Primavera* Action.").  *But see Dow Chem.*, 2004 WL 1348932, at *13 ("Two federal courts . . . determined that the state-law claims were not tolled while the certification was pending, even though the two states in questions – Virginia and New Mexico – had not adopted clear positions regarding cross-jurisdictional tolling . . . .  *Barela* observed in part that '[t]his Court does not believe that any overriding federal interest in class actions mandates application of *American Pipe* in diversity cases in the absence of applicable state tolling law.'") (quoting *Barela v. Denko K.K.*, No. CIV. 9301469, 1996 WL 316544, at *4 (D.N.M. Feb. 28, 1996)).

[60]     *See* Soward Mem. at 23.

15

Circuit has recently made clear that the question of "whether, and to what extent, the statute of limitations should be tolled by the filing of a putative class action in another jurisdiction" is purely a question of state law.[61]  Rather than considering "federal interests" and forum shopping, the Second Circuit looked solely at various sources of state law and, noting that it lacked "sufficient indicia of Virginia law," certified the question to the Supreme Court of Virginia.[62]

None of the cases cited by Soward or Deutsche Bank, or indeed uncovered by this Court, answers the question as to whether New York would allow cross-jurisdictional tolling.  Predicting how New York courts would rule on the issue of cross-jurisdictional tolling would be difficult.  The few states that have considered the issue have been split in both their acceptance of cross-jurisdictional tolling and the rationale for their decision.[63]  Furthermore, little authority exists as to how a federal court in this Circuit decides whether a state would allow cross-jurisdictional tolling when that state has not addressed the issue.  Of the federal courts that have considered this issue, most have refused to extend the doctrine into

---

[61]     *See Casey*, 2011 WL 3375104, at *5.

[62]     *Id.* at *5, *8.

[63]     *See Stevens v. Novartis Pharm. Corp.*, 358 Mont. 474, 484 (2010) ("So called 'cross-jurisdictional tolling' has rarely been addressed, and the few state courts and secondary sources to have considered the doctrine have expressed widely divergent viewpoints.").

a state that has yet to consider it.[64]  In this regard, *Primavera* is in the minority of

cases that have imported the doctrine into another jurisdiction's law before that

---

[64]     *See In re Fosamax*, 694 F. Supp. 2d at 258 ("Recognizing the lack of consensus on the [cross-jurisdictional tolling] issue, federal courts generally have been disinclined to import cross-jurisdictional tolling into the law of a state that has not ruled on the issue.").  *Accord*, *e.g.*, *Clemens v. DaimlerChrysler*, 534 F.3d 1017 (9th Cir. 2008) (declining to toll a California statute of limitations based on an Illinois class action); *Wade v. Danek Med., Inc.*, 182 F.3d 281, 286 (4th Cir. 1999) (declining to toll Virginia's statute of limitations) ("In predicting whether the Virginia Supreme Court would apply an equitable tolling rule, we are mindful of the general principle that, '[i]n trying to determine how the highest state court would interpret the law, we should not create or expand that State's public policy.'" (alteration in original) (citations omitted); *In re Urethane Antitrust Litig.*, 663 F. Supp. 2d 1067, 1081-82 (D. Kan. 2009) ("In the absence of a Tennessee decision compelling the opposite result, this Court declines to import a tolling doctrine into Tennessee state law where it previously did not exist.") (also refusing to import cross-jurisdictional tolling into Indiana law in the absence of any Indiana authority recognizing the doctrine) (citations omitted); *Love v. Wyeth*, 569 F. Supp. 2d 1228, 1235-36 (N.D. Ala. 2008) (declining to toll Alabama's statute of limitations during the pendency of a class action filed in a Louisiana federal court) ("Conspicuous, and ultimately significant, is what the Supreme Court [of Alabama] did **not** say in *White*.  It did **not** say that an Alabama plaintiff can rely upon the pendency of a putative class action filed in **another state** in which the 'would-be' class is **national** in scope.") (alteration in original); *In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d 799, 811 (E.D. La. 2007) ("[T]he Court finds that the plaintiff's claims are not saved by *American Pipe* tolling under Puerto Rico law, although Puerto Rico has not explicitly adopted cross-jurisdictional tolling.  Absent clear guidance, the Court will not expand Puerto Rico's class action tolling doctrine.") (citations omitted); *In re Enron Corp. Secs.*, 465 F. Supp. 2d 687, 722 (S.D. Tex. 2006) (refusing to toll Texas statute of limitation due to a pending federal class action; however, tolling Ohio statute of limitations due to Ohio's recognition of cross-jurisdictional tolling) ("In contrast to Texas, Ohio has recognized cross-jurisdictional tolling by a federal class action of state statute of limitations for Ohio state-law claims.") (citations omitted).

jurisdiction has ruled on the issue.  Moreover, *Primavera*'s reliance on federal interests in reaching such a decision has recently been rejected by the Second Circuit.[65]  In the face of these overwhelming precedents, I cannot say that New York would adopt cross-jurisdictional tolling and decline to import the doctrine into New York's law.  This Court will therefore not toll New York's statute of limitations for the period when the *Becnel* and *Kottler* class certification status was pending.  Without the benefit of cross-jurisdictional tolling, even if the statute of limitations did not begin to run until the Voltaire and Alverstone accounts closed on May 15, 2000, Soward's fraud-based and fiduciary duty claims are time barred under the accrual prong.

## 2.    Discovery Prong

Soward argues that even if his claims are untimely under the accrual prong, they are timely under the second prong of section 213 – the discovery prong – because he could not have reasonably discovered the fraud until November 18, 2003, when the Senate Permanent Subcommittee on Government Affairs issued its report after an investigation into the tax shelter industry.[66]  However, without the benefit of cross-jurisdictional tolling, even if the discovery rule applies, Soward's

---

[65]    *See Casey*, 2011 WL 3375104, at *5.

[66]    *See* Soward Mem. at 27.

fraud claims were filed well after the two-year statute of limitations expired.

Soward's fraud claims are untimely under both prongs of section 213 and therefore

time-barred under New York law.  Pursuant to the borrowing statute, this Court

will apply the shorter of either New York's or California's statute of limitations.[67]

Because Soward's fraud claims are time-barred under New York law, they are

time-barred regardless of their status under California law.

### B.    Becnel's Fraud-Based and Fiduciary Duty-Based Claims

#### 1.    Accrual Prong

As with Soward, Becnel claims that, due to the doctrine of continuous

representation, the statute of limitations on his fraud-based and fiduciary-duty

based claims did not begin to run under the accrual prong until May 15, 2000,

when Deutsche Bank closed the Jardine and Hubbard accounts.[68]  However,

without the benefit of cross-jurisdictional tolling, even accepting Becnel's

---

[67]    Under California law, the statute of limitations is three years from the date of discovery for Soward's fraud-based claims and four years for Soward's fiduciary duty-based claims.  *See* Cal. Proc. Code §§ 338(d), 434.  Soward argues that his claims are timely under California law because California's doctrine of equitable tolling applies and tolls the statute of limitations during the pendency of the *Becnel* and *Kottler* class actions.  *See* Soward Mem. at 22.  However, in light of the fact that this Court has already found Soward's fraud-based and fiduciary duty-based claims time-barred under New York law, analysis of this California equitable doctrine will not change the outcome and is unnecessary because the borrowing statute bars a claim that is untimely under either New York or California law.

[68]    *See* Becnel Mem. at 17-18.

argument that the statute did not begin to run until the closing of the accounts,

Becnel filed his individual action on March 9, 2011 well after New York's six-year

statute of limitations expired.  Therefore, Becnel's fraud-based and fiduciary duty

claims are time barred under the accrual prong.

### 2.      Discovery Prong

Unlike Soward, who claims that he could not have reasonably

discovered the fraud until the Senate Subcommittee issued its report in 2003,[69]

Becnel claims that inquiry notice was not triggered until December 21, 2010 when

Deutsche Bank entered into the NPA.[70]  In support of this argument, Becnel points

to the *Kottler* class action[71] and argues that the *Kottler* court *found* that the loans

were legitimate and therefore "[a]t the very least, there are disputed factual

questions about when Plaintiffs were put on notice that the banks charged fees for a

---

[69]      *See* Soward Mem. at 27.

[70]      *See* Becnel Mem. at 12-15.  Becnel makes this allegation despite the
fact that the *Kottler* class action was filed on September 2, 2005 and the *Becnel*
class action, in which Becnel himself was the lead plaintiff, was filed on January
28, 2005.

[71]      The *Kottler* plaintiffs sued Deutsche Bank on the ground that
Deutsche Bank "knew that the tax strategies were fraudulent and yet participated in
a scheme to reap millions of dollars in fees from clients like the members of the
Class."  *See Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 455 (S.D.N.Y.
2009).

loan premium which did not exist."[72]

       The *Kottler* decision does not support Becnel's contention that "even

reasonable diligence could not have led Plaintiffs to discover that the DB loan

_____

[72]      Becnel Mem. at 15.  For example, Becnel points to the *Kottler* court's "Summary of Facts," which – based on the *Kottler* plaintiffs' amended complaint – recounts the *Kottler* defendants' roles in the tax shelter.  *See Kottler*, 607 F. Supp. 2d at 454 ("The facts summarized below are taken from the Amended Complaint, the allegations of which must be assumed true for purposes of these motions to dismiss.").  The "Summary of Facts" mentions that while KPMG marketed the strategies and the law firm of Brown & Wood gave legal advice, Deutsche Bank "provided funds that facilitated the financials so that the tax strategies could be implemented."  *Id.*

      Becnel also cites to a footnote in which the *Kottler* court explains why the Private Securities Litigation Reform Act of 1995 ("PSLR") did not bar the *Kottler* plaintiffs' resort to their RICO claims.  *See* Becnel Mem. at 12 (citing *Kottler*, 607 F. Supp. 2d at 457 n. 9).  The *Kottler* court explained that the PSLRA was inapplicable because "the alleged fraud here involved a tax scheme, with the securities transaction only incidental to any underlying fraud."  *Kottler*, 607 F. Supp. 2d at 457 n. 9.  Becnel argues that, with this statement, the *Kottler* court "held that there was nothing fraudulent about the financial mechanisms used to generate the tax losses."  Becnel Mem. at 13-14.  Finally, Becnel interprets the *Kottler* court's finding that the plaintiffs' fraud allegations did not meet the heightened pleading standard for Rule 9(b) to mean that "Judge Crotty's decision to dismiss the fraud claims against the banks based upon his finding that there was nothing fraudulent about the financial mechanism used to generate the tax losses demonstrates that even reasonable diligence could not have led Plaintiffs to discover that the DB loan premium was not legitimate."  *Id.*

      Becnel does not explain, however, how his own filing of a class action in 2005 failed to put him on notice of the alleged fraud or trigger inquiry notice.  Becnel also fails to discuss how the Senate Subcommittee's report issued in 2003, which specifically looked at the BLIPS Strategy, did not trigger inquiry notice.

premium was not legitimate."[73]  Becnel's interpretation of and reliance on *Kottler*

are inaccurate on multiple levels.  *First*, the *Kottler* court never *found* that

Deutsche Bank provided the loans.  Becnel mistakenly believes that the *Kottler*

court's statement of facts, which was taken from the plaintiffs' complaint, is

equivalent to the court finding those facts to be true.[74]  This, of course, is incorrect.

*Second*, the *Kottler* court dismissed the fraud claims because the pleadings were

insufficient to meet Rule 9(b)'s particularity requirement and not because the court

found that "there was nothing fraudulent about the financial mechanism used to

generate the tax losses."  Moreover, the "financial mechanism used to generate the

tax losses" refers to the securities transactions the parties used to implement the tax

shelters and not the loans at issue in this case.

     For these reasons, Becnel's reliance on *Kottler* provides no support

for his argument regarding notice.  Other than *Kottler*, Becnel does not provide any

further reasons as to why the discovery rule saves his Complaint from being

---

[73] Becnel Mem. at 14.

[74] *See id.* at 12 ("After the Court found that the banks provided the funds
. . . .").  *See also id.* at 13 ("After finding that there was nothing fraudulent about
the financial mechanism used to generate the tax losses, the Court in *Kottler*
dismissed the fraud claims against the banks.").

untimely.[75]  Without the benefit of cross-jurisdictional tolling, Becnel's fraud

claims are untimely under both prongs of section 213 and therefore time-barred

under New York law.  Pursuant to the borrowing statute, this Court will apply the

shorter of either New York's or Florida's statute of limitations.[76]  Because Becnel's

fraud claims are time-barred under New York law, they are time-barred regardless

of their status under Florida law.

### C.    Soward's Claims for Breach of Contract and Breach of Implied Duty of Good Faith and Fair Dealing

Soward claims that Deutsche Bank breached Section 2.01 of the

Soward Credit Agreement wherein Deutsche Bank agreed to make available to the

borrower on the borrowing date an amount equal to $10.4 million when in fact the

---

[75]    For example, when addressing New York's section 213, Becnel only analyzes dates under the accrual prong and not the discovery prong.  *See id.* at 24. However, when Becnel turns his attention to Florida law, he uses November 18, 2003 as the date when "the fraud was discovered or should have been discovered." *Id.* at 25.  Even if that date is used, Becnel's Complaint was still filed well after the two-year state of limitations expired.

[76]    Under Florida law, the statute of limitations is four years for both Becnel's fraud-based and fiduciary duty-based claims.  *See* Fla. Stat. § 95.11(3)(j). *See also* Fla. Stat. § 95.11(3)(p).  However, in light of the fact that this Court has already found Becnel's fraud-based and fiduciary duty-based claims time-barred under New York law, analysis of Florida's statutes of limitations will not change the outcome and is unnecessary because the borrowing statute bars a claim that is untimely under either New York or Florida law.

loan was a sham and never occurred.[77]  For similar reasons, Soward also claims

that Deutsche Bank breached the Assignment Agreement between Soward and

Presidio.[78]  New York's statute of limitations for a breach of contract is six years

and is measured from the time of the breach.[79]  Soward argues that the New York

statute of limitations began to run on May 15, 2000, upon the closing of his

accounts at Deutsche Bank.[80]  However, because I have declined to toll the statute

of limitations during the pendency of the *Kottler* and *Becnel* class actions,

Soward's contract claims are also time-barred under New York's six-year statute

of limitations.  As with his fraud-based claims, Soward's contract claims are time-

barred regardless of their status under California law because the borrowing statute

looks to the shorter of New York or California's statute of limitations, including

tolling periods.[81]

> ### D.   Becnel's Claims for Breach of Contract and Breach of Implied Duty of Good Faith and Fair Dealing

---

[77]     *See* Soward Am. Compl. ¶¶ 19, 30.

[78]     *See id.* ¶ 19.

[79]     *See* N.Y. C.P.L.R. § 213(2).

[80]     *See* Soward Mem. at 20.

[81]     California's statute of limitations for Soward's contract-based claims
is four years.  *See* Cal. Civ. Proc. Code § 337.

Similar to Soward, Becnel claims that Deutsche Bank breached Section 2.01 of the Becnel Credit Agreement and its implied duty of good faith and fair dealing by representing the purported eighty million dollar loan was a real loan, by making withdrawals from the Jardine and Hubbard accounts for the sham loan and by entering into the Becnel Assignment Agreement.[82]  As mentioned above, New York's statute of limitations for breach of contract is six years from the time of the breach.  Becnel has not provided the Court with a date when he believes the contract was breached.[83]  However, in arguing that his Complaint was timely filed, Becnel does state that "under the continuing representation doctrine, the New York statute of limitations began to run on May 15, 2000."[84]  Even if the Court uses this date, without cross-jurisdictional tolling, Becnel's contract claims were filed well after the six year statute of limitations expired.  As with Becnel's other claims, his contract claims are time-barred regardless of their status under Florida law because the borrowing statute will use the shorter of New York or

---

[82]     *See* Becnel Compl. ¶¶ 78-80.

[83]     Becnel's brief, in a section entitled "Application of Tolling Doctrines," only mentions his fraud-based and fiduciary duty-based claims and not his breach of contract claims.  *See* Becnel Mem. at 24-25.

[84]     *See id.* at 18.

Florida's statute of limitations, including tolling periods.[85]

### E.      Leave to Amend Standard

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that other than amendments as a matter of right, "a party may amend its pleading only with the opposing party's written consent or with the court's leave."[86]  Although "[t]he Court should freely give leave when justice so requires,"[87] it is "within the sound discretion of the district court to grant or deny leave to amend."[88]  "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."[89]  However, "it is well established that leave to amend a complaint need not be granted when amendment would be futile."[90]

In response to Deutsche Bank's allegation that Soward has removed from his Amended Complaint all references to the BLIPS tax shelter as a "strategic

---

[85]      Florida's statute of limitations for Becnel's contract-based claims is five years.  *See* Fla. Stat. § 95.11 (2)(b).

[86]      *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006) (quotation marks omitted).

[87]      Fed. R. Civ. P. 15(a)(2).

[88]      *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

[89]      *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999).

[90]      *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).

26

slight of hand," Soward asks the Court for leave to file a second amended complaint in order to incorporate the original complaint, which does refer to the BLIPS Strategy.[91]  This request is denied.  Because Soward's claims must be dismissed as time-barred, amending the Amended Complaint would be futile and is therefore denied.

## V.    CONCLUSION

For the foregoing reasons, Deutsche Bank's motions to dismiss are granted.   The Clerk of the Court is directed to close these motions (10 Civ. 9248, docket no. 11; 11 Civ. 01615, docket no. 7) and these cases.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
September 1, 2011

---

[91]    *See* Soward Mem. at 9.

27

**- Appearances -**

**For Plaintiffs Soward and Becnel:**

Brian G. Isaacson, Esq.
Mark J. Wilson, Esq.
Isaacson & Wilson, P.S.
1200 Fifth Avenue, Suite 1900
Seattle, Washington 98101
(206) 448-1011

**For Defendants**:

Allan Noel Taffel, Esq.
Keith Evan Blackman, Esq.
Duval & Stachenfeld LLP
101 Park Avenue, 11th Floor
New York, New York 10178
(212) 883-8883